**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **PHYNET DERMATOLOGY LLC, and NORTHEAST DERMATOLOGY ASSOCIATES, P.C.** | )<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| v. | ) **CASE NO.**<br>) |
| **LAUREN GRADY, and OPTIMA DERMATOLOGY PARTNERS LLC** | )<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

**VERIFIED COMPLAINT**

Plaintiffs PhyNet Dermatology LLC ("PhyNet") and Northeast Dermatology Associates, P.C. ("NEDA") (together, "Plaintiffs"), by their attorneys Epstein Becker & Green, P.C., bring this action against their former employee, defendant Lauren Grady ("Grady"), and her new employer, Optima Dermatology Partners LLC ("Optima") (collectively, "Defendants"), for injunctive relief and damages, and complains as follows:

**NATURE OF THIS ACTION**

1.  NEDA employed Grady beginning on or about July 5, 2011. In or about September 2017, PhyNet purchased the non-clinical assets of NEDA, and Grady became an employee of PhyNet on or after January 1, 2018. On or about February 27, 2023, Grady was promoted to Area Practice Manager, managing six of NEDA's branches in New Hampshire and Maine, a substantial increase in responsibility and access to Plaintiffs' confidential information. On or about June 5, 2023, Grady resigned and refused to disclose the name of her new employer or her position. Grady accepted an offer with PhyNet's direct competitor, Optima, upon information and belief as a Regional Manager.

1

2. In the weeks following Grady's resignation, multiple Plaintiffs' employees received offer letters from Optima and resigned to work for Optima.

3. Once it became clear that this was a concerted effort by Optima, upon information and belief with the assistance of Grady, to raid Plaintiffs' workforce, Plaintiffs reviewed Grady's company-issued email and discovered that *in the two final days of her employment*, Grady emailed twenty-six highly confidential documents to her personal email address, including new hire training and orientation materials, business documents concerning Plaintiffs' products and services, fee schedules and pricing guidelines, employee benefits information, and documents containing sensitive patient information, among other documents. There was no justifiable business reason for her to have done so.

4. Upon information and belief, Grady has used these documents in connection with her employment at Optima, with Optima's aid and encouragement, including for the purpose of recruiting Plaintiffs' employees to work at Optima, thereby providing Optima with an opportunity to unfairly gain a competitive advantage over Plaintiffs and poach their employees.

5. Grady's actions blatantly violate the Workforce Confidentiality Agreement ("WCA") (a copy of which is attached as Exhibit A) that she signed on March 8, 2013, and constitute misappropriation of Plaintiffs' trade secrets under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*., and the New Hampshire Uniform Trade Secrets Act ("NHUTSA"), NH Rev Stat § 350-B:1, *et seq*. Further, Optima's complicity therewith, if not encouragement thereof, constitutes tortious interference with existing contractual relations. Plaintiffs bring this action to protect their provider relationships, patient relationships, employee relationships, and confidential business information, and to recover all damages caused by Grady's

misappropriation of their trade secrets and breach of contract, and Optima's tortious interference with existing contractual relations.

**PARTIES**

6. PhyNet is a corporation organized under the laws of the State of Delaware with its principal place of business located at 302 Innovation Blvd., Suite 400, Franklin, TN, 37067. PhyNet is and at all material times has been transacting and/or doing business in this judicial district.

7. NEDA is a corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business located at 262 South River Road, Bedford, NH, 03110. NEDA is and at all material times has been transacting and/or doing business in this judicial district.

8. Upon information and belief, Optima Dermatology Partners LLC is a corporation organized under the laws of the State of Delaware with its principal place of business located at 111 New Hampshire Ave, Suite 2, Portsmouth, NH, 03801. Upon information and belief, Optima Dermatology Partners LLC is and at all material times has been transacting and/or doing business in this judicial district.

9. Upon information and belief, Grady is a citizen of the State of New Hampshire residing at her last known address of 1125 Washington Road, Rye, NH, 03870.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case raises a federal question and because 18 U.S.C., § 1836, *et seq.*, creates a federal civil cause of action.

11. This Court has supplemental subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over Grady because Grady resides in New Hampshire.

13. This Court has personal jurisdiction over Optima because Optima hired and currently employs Grady in New Hampshire and caused events to occur in New Hampshire out of which these claims arise.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district by virtue of the fact that Grady misappropriated Plaintiffs' trade secrets in this district, previously worked for Plaintiffs in this district, and currently works for Optima in this district, and as such Plaintiffs were harmed in this district.

**FACTUAL BACKGROUND**

**I.    Plaintiffs' Confidential Business Information and Trade Secrets**

15. PhyNet is a leading, national dermatology practice management company. With more than 115 locations in 17 states across the country, PhyNet offers expert administrative management and support that enables physicians to focus their efforts on continuing to provide exceptional patient care in the communities they serve. NEDA is a dermatology practice with over 20 locations in Maine, Massachusetts, and New Hampshire. NEDA has provided dermatology services in New Hampshire since 1991.  In September 2017, PhyNet acquired all of NEDA's non-clinical assets, creating an ongoing affiliation between PhyNet and NEDA. NEDA continues to operate as a dermatology practice in PhyNet's network.

16. Some of Plaintiffs' most important assets are their confidential business information and trade secrets, which include product and services information; the names of existing and potential providers; needs, preferences, and requirements of particular providers and

patients; fee schedules and pricing models; new hire orientation and training methods; and other similar information related to the operation of a dermatology practice.

17. Plaintiffs' success is dependent on, among other things, their ability to develop and maintain provider and patient relationships; their efforts to compile, maintain, organize, and act on provider and patient information to ensure quality dermatologic care; and the skills and expertise of their experienced and properly trained employees.

18. In order to grow their business, Plaintiffs have spent extensive time and invested substantial resources to create and maintain as secret, proprietary data concerning its product and service information, their provider and potential provider lists, their list of provider needs, preferences, and requirements, and their unique pricing models and fee schedules. This data is competitively valuable and not generally known or readily ascertainable by their competitors, and Plaintiffs take reasonable measures to protect it from being disclosed.

19. Plaintiffs also expend significant effort and expense to maintain as secret their proprietary data concerning employee information, including compensation and benefits, and other information concerning employee retention; and new hire training and orientation, which is highly technical in nature. This proprietary data is competitively valuable, and not generally known or readily ascertainable by their competitors, and Plaintiffs take reasonable measures to protect it from being disclosed including, but not limited to: (a) storing it in a password-protected computer system; (b) storing certain highly confidential and sensitive information on databases with additional password protection; (c) limiting access to such information to certain employees with a need to know; (d) implementing multiple information protection documents and policies, including a code of conduct, employee handbook, and specific confidentiality and information use policies; (e) requiring employees to sign confidentiality agreements like the WCA that limit the

use and disclosure of such information; and (f) through agreements like the WCA, requiring employees to return all copies of the information obtained from the system upon termination of employment.

## II. Plaintiffs' Employment Relationship with Grady, and her Access to their Confidential Information

20. On or about July 5, 2011, NEDA hired Grady.

21. On March 8, 2013, Grady signed the WCA, which stated, in relevant part:

> I understand that during the course of my employment / assignment / affiliation at Northeast Dermatology, I may see or hear other Confidential Information such as financial data and operational information pertaining to the practice that Northeast Dermatology Associates is obligated to maintain as confidential ("Confidential Information").

(*See* Ex. A at 1.)

22. Accordingly, NEDA required Grady to agree to the following:

> I will not make any unauthorized transmissions, copies, disclosures, inquiries, modifications or purging of Patient Information or Confidential Information. Such unauthorized transmissions include, but are not limited to: removing and/or transferring Patient Information or Confidential Information from Northeast Dermatology Associates' computer system to unauthorized locations (for instance, home).

(*See* Ex. A at 1.)

23. In September 2017, PhyNet purchased the non-clinical assets of NEDA, and Grady became a PhyNet employee on or after January 1, 2018. Around March 2022, Grady was promoted to Practice Manager of three New Hampshire branches, and her compensation, responsibilities, and access to Plaintiffs' confidential information and trade secrets was increased concomitantly.

24. As one of only two practice managers responsible for the New Hampshire branches, Grady had access to and used information that Plaintiffs consider and treat as confidential. Such information included highly technical and specialized new hire and orientation materials; confidential product and service information; fee schedules and pricing information; the names of

6

existing and potential providers; needs, preferences, and requirements of particular providers; the names of Plaintiffs' employees and their performance, salaries, and bonus eligibility and amounts, among other sensitive information available solely to managerial employees through a password-protected secure file system; and patient protected health information and personally identifiable information.

25. In February 2023, the practice manager responsible for one New Hampshire branch and two Maine branches resigned for a position with Optima. Grady indicated she was interested in obtaining additional responsibilities and an increase in compensation, and accordingly, Grady was promoted to Area Practice Manager, where she would be responsible for managing six branches—four New Hampshire branches and two Maine branches. Plaintiffs also provided Grady with a salary increase.

26. In connection with her promotion to Area Practice Manager, Grady continued to have access to and use the confidential information described above, albeit for the additional practices as well, and in addition, Plaintiffs provided her with password-protect access to Tableau, the platform on which Plaintiffs store highly sensitive and confidential operational and revenue cycle information, which is only provided on a need to know basis.

### III. Grady Violated the Confidentiality Agreement and Optima is Raiding Plaintiffs Workforce, Ostensibly with Grady's Assistance and use of Plaintiffs' Confidential Information

27. On or about Junee 5, 2023, Grady notified her supervisor that she was resigning effective June 16, 2023. When asked where she would be working next, Grady refused to say. When asked if she would be working at Optima, Grady was silent.

28. Plaintiffs later discovered that Grady is, in fact, employed by Optima, upon information and belief as a Regional Director with similar responsibilities to those she had as Area Practice Manager for Plaintiffs. Due to her not having signed a non-compete agreement, and

7

having no reason to believe she had stolen any confidential information, Plaintiffs took no action at the time.

29. In the weeks following Grady's resignation, however, multiple Plaintiffs' employees received offer letters from Optima and resigned to work for Optima.

30. Plaintiffs quickly realized that this was a concerted and highly aggressive effort by Grady and Optima to raid its workforce, and thus undertook a review of Grady's company-issued email account because, due to the aggressive and fast paced nature of Optima's hiring, Plaintiffs were concerned that Grady may have misappropriated confidential and proprietary information to aid Optima in recruiting their employees. Plaintiffs were right to be concerned; what they discovered was astonishing, and went well beyond mere personnel information.

31. Specifically, on or about June 15 and June 16, 2023—*the final two days of her employment*—Grady emailed twenty-six highly confidential and sensitive documents to her personal email address, including, without limitation:

   a. Documents with detailed confidential business information that describe Plaintiffs' post-care techniques and methods for certain medical procedures.

   b. New hire training and orientation materials with highly technical information concerning medical training and qualifications.

   c. Documents describing the employee benefits that Plaintiffs offer, including paid time off and 401k offerings.

   d. Fee schedules and pricing information for dermatologic procedures.

32. Between Grady's resignation and the date of this Verified Complaint, Optima has attempted to recruit no fewer than fifteen of Plaintiffs' employees, and successfully poached ten of Plaintiffs' employees, including some of its highest producing physicians.

33. Upon information and belief, Optima and Grady have and continue to use Plaintiffs' misappropriated confidential information and trade secrets to raid Plaintiffs' workforce and build

8

its own practice through unfair means, including its new hire training program and database of template patient forms, insurance forms, medical appointment guidelines, pricing guidelines and fee schedules, and post-care instructions.

34. Defendants have already caused Plaintiffs substantial irreparable harm and monetary damages, and will continue to do so if they are not immediately enjoined from using and disclosing Plaintiffs' confidential information and trade secrets to compete unfairly.

## CAUSES OF ACTION

### COUNT I
### (Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(B)(1), *et. seq* against Grady)

35. Plaintiffs restate and incorporate herein by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

36. Grady's conduct violated the DTSA, 18 U.S.C. § 1836, *et seq*.

37. Plaintiffs have expended considerable resources over many years to discover, amass, and protect certain non-public, highly valuable confidential and proprietary business information and trade secrets, including their product and service information; the names of existing and potential providers; needs, preferences, and requirements of particular providers; unique pricing models and fee schedules; proprietary data concerning employee information, including compensation and benefits, and other information concerning employee retention; and new hire training and orientation.

38. Such information gives Plaintiffs a significant competitive advantage over their existing and would-be competitors, including Optima. This advantage would be lost if this information became known to Optima.

39. Plaintiffs have made reasonable efforts to maintain the confidentiality of their proprietary business information and trade secrets, including but not limited to: (a) storing them in

a password-protected computer system; (b) storing certain highly confidential and sensitive information on databases with additional password protection; (c) limiting access to such information to certain employees with a need to know; (d) implementing multiple information protection documents and policies, including a code of conduct, employee handbook, and specific confidentiality and information use policies; (e) requiring employees to sign confidentiality agreements like the WCA that limit the use and disclosure of such information; and (f) through agreements like the WCA, requiring employees to return all copies of the information obtained from the system upon termination of employment.

40. Grady had knowledge of, access to, and possession of Plaintiffs' confidential and proprietary business information and trade secrets.

41. By virtue of her position, Grady owed Plaintiffs the duty to refrain from disclosing or exploiting their confidential and proprietary business information, trade secrets, and know-how for her own benefit, for the benefit of Optima or other competitors, or to the detriment of Plaintiffs.

42. Because of the confidential and proprietary information and trade secrets to which Grady was exposed, had access to, and received knowledge of as a Practice Manager, and then Area Practice Manager, and because, upon information and belief, Grady serves as a Regional Director at Optima, a direct competitor of Plaintiffs, it is inevitable that Grady will rely on, draw from, and disclose (and Optima will benefit from) the confidential and proprietary information and trade secrets she learned during her employment with Plaintiffs.

43. Indeed, Grady actually misappropriated Plaintiffs' trade secrets, as is defined in 18 U.S.C. § 1839(5)(B), including but not limited to, fee schedules and pricing information, new hire orientation and training materials, and product and service materials.

44. The trade secrets that Grady misappropriated were intended for use and/or were in fact used in interstate commerce.

45. As a direct and proximate result of Grady's unlawful misappropriation of Plaintiffs' trade secrets in violation of the DTSA, Plaintiffs have suffered damages in an amount to be determined at trial.

46. As a direct and proximate result of Grady's unlawful misappropriation of Plaintiffs' trade secrets in violation of the DTSA, Defendants have been unjustly enriched in an amount to be determined at trial.

47. As a direct and proximate result of Grady's unlawful misappropriation of Plaintiffs' trade secrets, Plaintiffs are suffering and will continue to suffer irreparable harm if Grady's misappropriation and use of Plaintiffs' trade secrets are not enjoined.

48. The misappropriation of Plaintiffs' trade secrets was done in bad faith and was willful and malicious.

**COUNT II**
**(Misappropriation of Trade Secrets in Violation of the New Hampshire Uniform Trade Secrets Act, NH Rev Stat § 350-B:1, *et. seq* against Grady)**

49. Plaintiffs restate and incorporate herein by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

50. Grady's conduct violated the NHUTSA, NH Rev Stat § 350-B:1, *et seq*.

51. Plaintiffs has expended considerable resources over many years to discover, amass, and protect certain non-public, highly valuable confidential and proprietary business information and trade secrets, including their product and service information; the names of existing and potential providers; needs, preferences, and requirements of particular providers; unique pricing models and fee schedules; proprietary data concerning employee information, including

compensation and benefits, and other information concerning employee retention; and new hire training and orientation.

52. Such information gives Plaintiffs a significant competitive advantage over their existing and would-be competitors, including Optima. This advantage would be lost if this information became known to Optima.

53. Plaintiffs have made reasonable efforts to maintain the confidentiality of their proprietary business information and trade secrets, including but not limited to: (a) storing them in a password-protected computer system; (b) storing certain highly confidential and sensitive information on databases with additional password protection; (c) limiting access to such information to certain employees with a need to know; (d) implementing multiple information protection documents and policies, including a code of conduct, employee handbook, and specific confidentiality and information use policies; (e) requiring employees to sign confidentiality agreements like the WCA that limit the use and disclosure of such information; and (f) through agreements like the WCA, requiring employees to return all copies of the information obtained from the system upon termination of employment.

54. Plaintiffs' confidential and proprietary business information and trade secrets derive independent economic value from not being generally known to the public or to other persons who can obtain economic benefits from their disclosure.

55. Grady had knowledge of, access to, and possession of Plaintiffs' confidential and proprietary business information and trade secrets.

56. By virtue of her position, Grady owed Plaintiffs the duty to refrain from disclosing or exploiting their confidential and proprietary business information, trade secrets, and know-how for her own benefit, for the benefit of Optima or other competitors, or to the detriment of Plaintiffs.

57. Because of the confidential and proprietary information and trade secrets to which Grady was exposed, had access to, and received knowledge of as a Practice Manager, and then Area Practice Manager, and because, upon information and belief, Grady serves as a Regional Director at Optima, a direct competitor of Plaintiffs, it is inevitable that Grady will rely on, draw from, and disclose (and Optima will benefit from) the confidential and proprietary information and trade secrets she learned during her employment with Plaintiffs.

58. Indeed, Grady actually misappropriated Plaintiffs' trade secrets, as is defined in NH Rev Stat § 350-B:1(II), including but not limited to, fee schedules and pricing information, new hire orientation and training materials, and product and service materials.

59. As a direct and proximate result of Grady's unlawful misappropriation of Plaintiffs' trade secrets in violation of the NHUTSA, Plaintiffs have suffered damages in an amount to be determined at trial.

60. As a direct and proximate result of Grady's unlawful misappropriation of Plaintiffs' trade secrets in violation of the NHUTSA, Defendants have been unjustly enriched in an amount to be determined at trial.

61. As a direct and proximate result of Grady's unlawful misappropriation of Plaintiffs' trade secrets, Plaintiffs are suffering and will continue to suffer irreparable harm if Grady's misappropriation and use of Plaintiffs' trade secrets are not enjoined.

62. The misappropriation of Plaintiffs' trade secrets was done in bad faith and was willful and malicious.

## COUNT III
**(Breach of Contract against Grady)**

63. Plaintiffs restate and incorporate herein by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

64. The WCA, signed by Grady on March 8, 2013, is a valid and enforceable agreement. (Ex. A).

65. Grady received consideration for signing and entering into the WCA, including employment with NEDA, certain employee benefits, and access to Plaintiffs' confidential and proprietary information.

66. At all relevant times, Grady has been, and continues to be, bound by the terms of the WCA.

67. Grady breached the WCA by misappropriating Plaintiffs' confidential information and trade secrets, including, without limitation, fee schedules and pricing information, new hire orientation and training materials, and product and service materials.

68. Plaintiffs performed each and every obligation required of them under the WCA, and all relevant conditions precedent to the enforcement of the WCA have been satisfied.

69. As a direct and proximate result of Grady's breach of the WCA, Plaintiffs have suffered and will continue to suffer irreparable harm.

70. Injunctive relief is necessary as the recovery of money damages would not fully compensate Plaintiffs for Brady's breach of the WCA.

### COUNT IV
### (Tortious Interference against Optima)

71. Plaintiffs restate and incorporate herein by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

72. A valid contractual relationship exists between Plaintiffs and Grady, to wit the WCA, and Plaintiffs complied and continue to comply with their terms.

73. Optima knew or should have known of that relationship when it hired Grady.

74. Grady breached the WCA.

75. Upon information and belief, Optima intentionally interfered, knowingly inducing or causing Grady's breach of the WCA, by permitting and/or encouraging Grady to misappropriate Plaintiffs' trade secrets.

76. Upon information and belief, Optima has used the trade secrets misappropriated by Grady to poach Plaintiffs' employees, build its practice (including its new hire training program and database of template patient forms, insurance forms, medical appointment guidelines, pricing guidelines and fee schedules, and post-care instructions), and gain a competitive advantage over Plaintiffs.

77. By virtue of its conduct, Optima knowingly, intentionally, and maliciously sought to harm Plaintiffs.

78. As a result of Optima's interference with the WCA, Plaintiffs have been and continue to be irreparably harmed. By virtue of the foregoing, Optima is liable to Plaintiffs for substantial monetary damages in an amount to be determined at trial plus costs and interest at the applicable statutory rate.

79. In addition, because harm caused by Optima's tortious interference with the WCA cannot be fully remedied through an award of monetary damages alone, Plaintiffs are also entitled to preliminary and permanent injunctive relief preventing Grady from further using or disclosing Plaintiffs' confidential and proprietary information, and from engaging in other violations of her WCA.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

a) Injunctive relief, restraining and enjoining Grady, and any other persons who are in active concert or participation with her, from using or disclosing Plaintiffs' confidential information and trade secrets in breach of the WCA and in violation of state and federal law;

b) Injunctive relief, restraining and enjoining Optima, and any other persons who are in active concert or participation with Optima, from accepting or using Plaintiffs' confidential information and trade secrets and tortiously interfering with the WCA, including but not limited to using such confidential information and trade secrets to identify, recruit, or offer employment terms to any employee of Plaintiffs;

c) Damages and/or recovery for unjust enrichment in an amount to be proved at trial in excess of the exclusive jurisdictional minimum;

d) Exemplary damages recoverable under the law;

e) Costs and expenses, including reasonable attorneys' fees, recoverable under the law;

f) Pre-and post-judgment interest at the highest legal rate; and

g) Any other relief as deemed to be warranted by this Court.


Dated: September 6, 2023

Respectfully submitted,

PHYNET DERMATOLOGY LLC and
NORTHEASTERN DERMATOLOGY
ASSOCIATES, P.C.,

By Their Attorneys,

*/s/ Ashley Krezmien*
Ashley Krezmien (Bar No. 277106)
Erik W. Weibust (*pro hac vice admission pending*)
Alicia Maziarz (*pro hac vice admission pending*)
Epstein Becker & Green, P.C.
125 High Street, Suite 2114
Boston, Massachusetts 02110
(617) 603-1090
AKrezmien@ebglaw.com
EWeibust@ebglaw.com
AMaziarz@ebglaw.com

## **VERIFICATION**

I, Jared Dillman, under penalty of perjury, verify that I am a Senior Vice President of Operations with PhyNet Dermatology LLC and that the facts in this Verified Complaint (except those facts based upon information and belief) are true and accurate to the best of my knowledge.

/s/ *[signature]*
Jared Dillman